# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

THOMAS J. QUATRINI,

        Appellant,

        v.

DEPARTMENT OF HOMELAND
    SECURITY,

        Agency.

DOCKET NUMBER
AT-1221-14-0586-W-1

DATE: January 30, 2015

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>Archibald J. Thomas, III</u>, Jacksonville, Florida, for the appellant.

<u>Joel Alexander</u>, Esquire, Irving, Texas, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the regional office for further adjudication in accordance with this Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        The agency terminated the appellant, a GS-9 Paralegal Specialist in the agency's Freedom of Information Act (FOIA) Office, during his 1-year probationary period for unsatisfactory performance and conduct in the workplace. Initial Appeal File (IAF), Tab 9 at 14-16 (removal notice), 43 (Standard Form 50). The appellant filed a complaint with the Office of Special Counsel (OSC), alleging reprisal for protected disclosures. IAF, Tab 1 at 10-21. Once OSC closed its investigation, the appellant filed the instant IRA appeal. *Id.* at 1-8. The administrative judge informed the appellant of his burden to establish jurisdiction over an IRA appeal and the parties responded. IAF, Tabs 3, 7-8. In an initial decision, the administrative judge found that the appellant had failed to nonfrivolously allege that any of his alleged disclosures were protected by the Whistleblower Protection Act (WPA) and dismissed the matter for lack of jurisdiction without holding the requested hearing. IAF, Tab 12, Initial Decision (ID) at 2-8. The appellant has filed a petition for review and the agency has responded in opposition. Petition for Review (PFR) File, Tabs 1-2.

¶3        The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). As set forth below, we find that the appellant exhausted his remedies before OSC and that he nonfrivolously alleged that his disclosures regarding alleged overtime and compensatory time violations and email fraud were protected and that these disclosures were a contributing factor in the personnel action.

The appellant exhausted his OSC remedies as to some disclosures.

¶4    The administrative judge did not make an explicit finding on exhaustion of remedies but purported to rely on the appellant's OSC complaint in outlining the appellant's alleged disclosures.  ID at 2 n.1.  An appellant may demonstrate exhaustion of his OSC remedies through his initial OSC complaint and evidence that he amended or supplemented his initial OSC complaint, including OSC's determination letter.  *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011).  Thus, we find that the following alleged disclosures were exhausted before OSC:  (1) the appellant informed his supervisor and other employees that personnel regulations did not permit the agency to require employees to work uncompensated overtime and that compensatory time could not be mandatory, IAF, Tab 1 at 14, 15; (2) he informed the FOIA Officer that she could not "reflect" an employee's use of compensatory time on his or her performance evaluation, *id.* at 15; (3) he complained to the FOIA Officer and Deputy Officer that probationary employees had not been provided objective performance measures or performance feedback and that there was no consistency between the reviewers, *id.* at 16-17; (4) he informed his supervisor that performing FOIA request intake duties was not part of his duties, and requested instructions in writing relieving him from FOIA analyst duties while performing intake duties, *id.*; (5) he informed the FOIA Officer that the probationary employees lacked objective performance measures and performance feedback and that she had made rude and disrespectful comments to the office employees, *id.* at 17; (6) he "engaged" the Office of Inspector General and office leadership regarding office efficiency, employee treatment, and FOIA processes; (7) he "decr[ied]" gross mismanagement and an abuse of authority in the agency's treatment of employees and the establishment of an unfair work output quota; (8) he disclosed to an unspecified person that agency officials did not train him properly; and (9) he disclosed to an unspecified person that the agency failed to

investigate alleged nepotism and alleged email fraud/forgery after an email was sent from a fake gmail account associated with the appellant's name.[2] *Id.* at 8.

The appellant made a nonfrivolous allegation of a protected disclosure.

¶5 On petition for review, the appellant argues that the administrative judge erred insofar as she determined that he had failed to nonfrivolously allege a protected disclosure regarding nonpayment of overtime and because she failed to mention or evaluate his alleged disclosure of email fraud. PFR File, Tab 1 at 4. He alleges that these disclosures were "so obvious" that he need not have identified the law, rule, or regulation violated.[3] *Id.* The appellant also broadly asserts that, taken together, his disclosures evidence gross mismanagement. *Id.* Because the appellant has not specifically challenged any other of the administrative judge's findings on review, we will consider only these challenges to the initial decision. *See* 5 C.F.R. § 1201.114(b).

¶6 At the jurisdictional stage, the appellant is only burdened with nonfrivolously alleging that he reasonably believed that his disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8); namely, a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.[4]

---

[2] The administrative judge considered an additional disclosure regarding unauthorized personnel being allowed into secure areas, ID at 3, 6, which only appears in the appellant's Board appeal and not the OSC complaint or OSC close-out letter, *see* IAF, Tab 1 at 8, 14-21, 26-29. There is no indication that the alleged disclosure regarding unauthorized personnel being allowed in secure areas was ever presented to OSC. *See id.* Thus, we find that the appellant did not exhaust his OSC remedy with respect to the unauthorized personnel disclosure.

[3] On petition for review, the appellant asserts that his disclosures regarding nonpayment of overtime compensation sufficiently identified a violation of the Fair Labor Standards Act (FLSA), Pub. L. 75-718, ch. 676, 52 Stat. 1060 (June 25, 1938); 29 U.S.C. ch. 8, and that his disclosure of email fraud clearly implicated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. PFR File, Tab 1 at 4.

[4] The Whistleblower Protection Enhancement Act of 2012 amended various provisions of the WPA, including 5 U.S.C. § 2302(b)(9), which provides for additional types of

*Mason*, [116 M.S.P.R. 135](), ¶ 17; *see* [5 U.S.C. § 2302](b)(8).  The proper test for determining if an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced one of the conditions set forth in [5 U.S.C. § 2302](b)(8).  *Mason*, [116 M.S.P.R. 135](), ¶ 17.  Moreover, the WPA does not require an employee to identify the particular statutory or regulatory provision that the agency allegedly violated where his statements and circumstances of those statements clearly implicate an identifiable law, rule, or regulation.  *Baldwin v. Department of Veterans Affairs*, [113 M.S.P.R. 469](), ¶ 12 (2010).  Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction.  *Ingram v. Department of the Army*, [114 M.S.P.R. 43](), ¶ 10 (2010).

¶7    Below, the appellant generally asserted that some of his wage and hour disclosures evidenced violations of Office of Personnel Management (OPM) regulations, but he did not identify any specific provision of law, rule, or regulation.  *See* IAF, Tabs 1, 7.  The administrative judge found that the appellant had failed to nonfrivolously allege that he had made a protected disclosure of any wage and hour violation because:  (1) it was not clear, and the appellant failed to explain, how informing employees that they could not work uncompensated overtime evidences a violation of law, rule, or regulation, ID at 4; (2) she was not aware of, and the appellant failed to identify, any law, rule, or regulation that the agency may have violated by offering employees compensatory time instead of overtime, ID at 4-5; and (3) she was not aware of, and the appellant failed to identify, any law, rule, or regulation that would prevent a supervisor from mentioning whether an employee had worked compensatory time in his performance evaluation, ID at 5.

---

protected activities.  *See Linder v. Department of Justice*, [122 M.S.P.R. 14](), ¶ 9 (2014).  However, none of these new activities are implicated here.  *See* [5 U.S.C. § 2302](b)(9).

¶8    As indicated above, however, the appellant need not prove that the condition he disclosed actually established a violation of law, rule, or regulation. *See* 5 U.S.C. § 2302(b)(8)(A)(i); *see also Mason*, 116 M.S.P.R. 135, ¶ 17. Here, we find that the appellant's statement that management required paralegals to work uncompensated overtime reasonably asserts a possible violation of the FLSA.[5] *See supra* n.3; *see also* IAF, Tab 1 at 14, 27; *Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, ¶ 11 (2004) (finding a possible violation of the FLSA when the appellant disclosed that the agency failed to pay overtime to employees for overtime worked). In addition, we find that a disinterested observer in the appellant's position could reasonably believe the appellant's statements, that OPM regulations prohibit agencies from requiring employees to work compensatory overtime and/or from reflecting an employee's use of compensatory time in his or her performance evaluation, evidence violations of federal wage and hour laws and regulations.[6] *See* IAF, Tab 1 at 15, 28. Accordingly, as to these wage and hour disclosures, we find that the appellant nonfrivolously alleged that he disclosed a violation of law, rule, or regulation. *See Chavez*, 120 M.S.P.R. 285, ¶ 19.

¶9    Next, the appellant asserts that his disclosure regarding an alleged email sent by another employee from a "fake" gmail account associated with the

---

[5] On review, the agency asserts that the appellant did not allege any wrongdoing or that any employee worked overtime without compensation but that he simply told employees that they "should not work overtime without compensation." PFR File, Tab 3 at 12. However, we find this contention to be unsupported by the record. *See* IAF, Tab 1 at 14, 27.

[6] Although the appellant need not have identified any specific law or regulation by title or number, we note that 5 C.F.R. § 551.531(c) and 5 U.S.C. § 5543(b) provide that an agency may not require an employee to be compensated for overtime work with compensatory time-off. Further, 5 C.F.R. § 551.531(c) prohibits an employee from attempting to coerce any other employee's right to request or not request compensatory time-off in lieu of overtime pay.

appellant's name to several supervisors evidences a violation of the CFAA.[7] PFR File, Tab 1 at 4. Below, the appellant characterized this disclosure as evincing gross mismanagement based on the agency's failure to investigate the alleged unethical act of email fraud/forgery, rather than as a violation of law, rule, or regulation, as he does on review. *See* IAF, Tab 1 at 9, 26-27. There is no requirement, however, that an appellant correctly label the category of wrongdoing under section 2302(b)(8) in order to establish Board jurisdiction. *Tullis v. Department of the Navy*, 117 M.S.P.R. 236, ¶ 7 (2012). Moreover, as stated above, the WPA does not require the appellant to identify a particular statutory or regulatory provision that the agency allegedly violated. *Baldwin*, 113 M.S.P.R. 469, ¶ 12. A disinterested person in the appellant's position could reasonably believe that federal computer crime and fraud laws have been violated when a federal employee creates an email account in his coworker's name, without authorization and then uses that email account to effectively impersonate the coworker in communications with his supervisors. *See* PFR File, Tab 1 at 4; *see also* IAF, Tab 1 at 9, 26-27; 18 U.S.C. § 1030. As such, we find that the appellant nonfrivolously alleged that he reasonably believed this disclosure evidenced a violation of law.

¶10    Lastly, the appellant contends that "the bulk of [his] disclosures under the totality of the circumstances and taken together as a whole" should be sufficient to meet the standard for gross mismanagement because they "show agency action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission." PFR File, Tab 1 at 4. The Board, however, requires an appellant to provide more than vague and conclusory allegations of wrongdoing. *Linder*, 122 M.S.P.R. 14, ¶ 13. Here, the appellant's allegation that some of his disclosures, taken together, would show an unspecified

---

[7] The CFAA, *see supra* n.3, is a criminal statute governing computer crime and fraud on the internet, which, among other things, makes it illegal to intentionally access a computer without authorization or in excess of authorization. 18 U.S.C. § 1030.

threat to an agency's ability to accomplish its mission, is a conclusory allegation lacking in specificity, and, as such, does not constitute a nonfrivolous allegation of IRA jurisdiction. PFR File, Tab 1 at 4; *see Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 17 (2006). Accordingly, we need not consider it further.

¶11    Even if we were to consider the appellant's vague claim that some of his disclosures, when considered together, show gross mismanagement, the result would be the same. *See* IAF, Tab 1 at 9-21, 26-29; *see also* PFR File, Tab 1 at 4. Gross mismanagement is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Shriver v. Department of Veterans Affairs*, 89 M.S.P.R. 239, ¶ 7 (2001). A disclosure questioning management decisions that are merely debatable or constitute just simple negligence, with no element of blatancy, is not protected as a disclosure of gross mismanagement. *Id.* In the instant case, the appellant's disclosures regarding alleged unfair output quotas, lack of objective performance standards, office inefficiencies, rude or disrespectful comments by the supervisors, and management's failure to investigate allegations of unethical acts, even if true, do not reveal anything more than a questioning of management decisions that are merely debatable or simple negligence, and we discern no indication of blatant wrongdoing.[8] *See Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 9 (2008); *see also* IAF, Tab 1 at 9-21. As such, we agree with the administrative judge's finding that the appellant failed to make any disclosure that a disinterested person in his position would reasonably believe

---

[8] The appellant also claimed below that he disclosed gross mismanagement insofar as he requested "dispensation" from his analyst duties in order to perform leadership-directed intake duties. IAF, Tab 1 at 16-17, 28. However, it is not clear, and the appellant has not explained, how a request to be excused from duties constitutes a disclosure of gross mismanagement or any other situation under 5 U.S.C. § 2302(b)(8). Accordingly, we will not address this alleged disclosure further.

evidenced gross mismanagement. *See* ID at 6; *see also Chavez v. Department of Veterans Affairs*, [120 M.S.P.R. 285](link), ¶ 18 (2013).

> The appellant nonfrivolously alleged that his disclosures were a contributing factor in the agency's decision to take a personnel action against him.

¶12     To establish Board jurisdiction over his IRA appeal, the appellant also must nonfrivolously allege that his protected activity was a contributing factor in the agency's decision to take the personnel action. *Carney v. Department of Veterans Affairs*, [121 M.S.P.R. 446](link), ¶ 7 (2014).  Because the administrative judge determined that the appellant failed to nonfrivolously allege that he made a protected disclosure, she did not make any finding as to whether any protected disclosure was a contributing factor in the appellant's termination. *See* ID at 8. Having determined on review that the appellant nonfrivolously alleged that he made several protected disclosures, we also will consider whether a protected disclosure was a contributing factor in the agency's decision to terminate him.

¶13     For jurisdictional purposes, an employee may establish that a protected activity was a contributing factor to a covered personnel actions through circumstantial evidence, such as the acting official's knowledge of the protected activity and the timing of the personnel actions. *Carney*, [121 M.S.P.R. 446](link), ¶ 7. The Board has held that personnel actions that were alleged to have begun within 1 year of the disclosures satisfy the "timing" component of the knowledge-timing test. *See Mudd v. Department of Veterans Affairs,* [120 M.S.P.R. 365](link), ¶ 10 (2013). In the instant case, the record shows that the appellant entered on duty with the agency on May 20, 2012, and was terminated on November 28, 2012, by the Deputy FOIA Officer.  IAF, Tab 1 at 22-24.  The appellant alleges that he made disclosures pertaining to overtime and compensatory time to his immediate supervisor and the FOIA Officer in June and July 2012, and that the information was also conveyed to the Deputy FOIA Officer. *Id.* at 14-15, 27-28.  He also asserts that, at some point during his 6-month employment, he informed the Deputy FOIA Officer and FOIA Officer of the alleged email fraud. *See id.* at 9,

26-27. Thus, we find that the appellant has made a nonfrivolous allegation that a protected disclosure was one factor that tended to affect the personnel action in some way based on the knowledge-timing test because the acting official was aware of the disclosures and the personnel action occurred within 6 months or less of all of his disclosures. *See Carney*, 121 M.S.P.R. 446, ¶ 7.

¶14     Accordingly, we find that the appellant has nonfrivolously alleged that that the disclosures were a contributing factor in the agency's decision to terminate his employment.

## ORDER

For the reasons discussed above, we REMAND this case to the regional office for further adjudication on the merits of this IRA appeal. On remand, the administrative judge shall hold a hearing and shall determine whether the appellant established by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) when he allegedly disclosed wage and hour violations and email fraud, and that such whistleblowing activity was a contributing factor in the personnel action; if so, the administrative judge must order corrective action unless the agency establishes by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. 5 U.S.C. §§ 1221(e), 2302(b)(8); *Fisher*, 108 M.S.P.R. 296, ¶ 15.

FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.